IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE GUARDIANSHIP OF HAMDAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE GUARDIANSHIP OF EHAB I. HAMDAN,
AN INCAPACITATED AND PROTECTED PERSON.

SOUAD HAMDAN, INTERESTED PARTY, APPELLANT,

V.

KADIJA HAMDAN ET AL., COGUARDIANS, APPELLEES.

Filed July 23, 2019.    No. A-18-846.

Appeal from the County Court for Douglas County: MARCELA A. KEIM, Judge. Affirmed.

Richard P. McGowan, of McGowan Law Firm, P.C., L.L.O., for appellant.

George T. Babcock, of Law Offices of Evelyn N. Babcock, and Mark John Malousek for appellees.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Souad Hamdan appeals the decision of the Douglas County Court denying her application to remove the current coguardians for her adult son, Ehab I. Hamdan; denying her motion to appoint herself as successor guardian for Ehab; and granting the coguardians' petition to transfer Ehab's guardianship to Georgia. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

This appeal involves a family dispute over the guardianship of 35-year-old Ehab, who has Down syndrome. In 2001, the Superior Court of Arizona appointed Ehab's father, Ibrahim H.

Hamdan, and his sister, Yasmine I. Hamdan, as Ehab's coguardians. In January 2014, the guardianship was transferred from Arizona to Nebraska after the family relocated. At that time, the Douglas County Court appointed Ibrahim and Ehab's sisters, Yasmine and Kadija Hamdan, as Ehab's coguardians.

After Ibrahim passed away in August 2016, coguardians Yasmine and Kadija filed two motions. The first motion sought an order discharging Ibrahim as Ehab's coguardian due to his death, and for an order appointing Ehab's brother, Osam Hamdan, as a coguardian. The second motion sought permission to move Ehab "out of the State of Nebraska because [his] primary care giver, Ibrahim . . . has passed away. Osam . . . has agreed to care for the ward in his home in Cumming, Georgia." A hearing on these motions was held on December 5, 2016. Following the hearing, the court entered an order discharging Ibrahim as coguardian; appointing Osam, Yasmine, and Kadija as coguardians; and authorizing the coguardians to move Ehab out of Nebraska. The Douglas County Court's journal entry noted that "Ehab is going to live in Georgia" and reflected that Kadija appeared along with counsel and that neither Souad, Ehab, nor Yasmine appeared. However, Kadija testified at a later July 2018 hearing that she, Souad, and Ehab were present at the hearing because she had driven them to the hearing in her car and they sat in the gallery during the hearing.

In early July 2017, Kadija told Souad that she was taking Ehab to dinner and a movie for his birthday; instead, she took Ehab to the airport in order to relocate him to Georgia to live with Osam. Once Ehab was in Georgia, Osam set up services for Ehab including getting Ehab a gym membership and arranging to have Osam's teenage sons exercise with Ehab, and establishing medical providers for Ehab including a family doctor, a GI doctor, a urologist, and a specialist who deals with low white blood counts. Once Ehab was living in Georgia, Osam changed the payee of Ehab's social security benefits from Souad to himself.

In September 2017, Souad filed an "Application to Remove Co-Guardians" and a "Motion for Appointment of Successor Guardian," requesting that the court appoint her as Ehab's guardian. The coguardians filed an objection which asserted that denial of Souad's application and motion was in Ehab's best interests because Ehab's "livelihood, medical care, educational programs and residency have been fully and completely established in Atlanta Georgia with the Co-Guardian, Osam Hamdan." Further, the objection stated that Ehab "wishe[d] to remain with his brother, Osam Hamdan in Atlanta." In June 2018, the coguardians filed a "Petition to Transfer the Guardianship to Another State" on the basis that Ehab had resided in Georgia since July 2017; all his medical doctors and specialists were located in Georgia; and his assets and personal property were located in Georgia.

A hearing on Souad's motion and application and the coguardians' petition to transfer Ehab's guardianship to Georgia was held in July 2018 in which witnesses including Osam, Kadija, Yasmine, and Souad testified. Kadija testified that she, her children, and Ehab moved out of Omaha in early July 2017. Kadija admitted that she told Souad that she was taking Ehab out to dinner and to a movie for his birthday but her intent was to put him on a plane to Georgia. She did not inform Souad of the plan to move because "[w]e were held against our will" by their brother Mohammad who had "control over [Souad] and all our lives." Kadija stated that she did not feel that Souad was entitled to know about the plan because "we were fearing for our [lives]." Although Kadija admitted that Souad had physically cared for Ehab for his entire life, she stated that Souad

did so with the assistance of herself, their father, Yasmine, Osam, and Mohammad. Kadija assisted Souad in taking Ehab to his doctor's appointments and filling out necessary paperwork. Souad disciplined Ehab with Kadija's assistance or the assistance of Kadija's children. As a "last resort," Souad would also seek assistance from Mohammad in disciplining Ehab. According to Kadija, sometimes Mohammad's discipline would become violent with Mohammad either hitting or verbally abusing Ehab. She further testified that Souad was unable to take care of Ehab financially or to make decisions regarding his medical or other future needs.

Osam also testified that Souad was not capable of caring for Ehab stating:

She's not capable of comprehending English very well. She is not articulate in her discussion. She doesn't read very well. She doesn't write at all. So -- and she doesn't drive and she just doesn't know how the process works around the things that [Ehab] needs. And, for that reason, my father himself, throughout the time that he was alive, he never saw her fit to be a guardian.

Yasmine testified that Souad restricts Ehab's services and activities. She testified that, during the four years that Ehab attended high school, Souad was out of the country. During that time, Ehab participated in the Special Olympics, speech therapy, and other services. However, after Souad returned in the summer of 2004, Souad did not want Ehab to leave the house and did not allow him to participate in any activities or receive any services.

Souad testified that, after the family moved Ehab to Atlanta, she and Mohammad attempted to visit Ehab that Christmas. Souad testified that Ehab was wearing diapers even though he had never worn diapers when he lived with her. Souad denied that there was any violence between Mohammad and Ehab and that, when Ehab lived with her, Ehab was able to go to the library and go swimming. Souad testified that she did not have any health problems that would interfere with her being able to take care of Ehab, but later admitted she has cancer. She denied that Ehab had any medical problems stating "[h]e is normal, and he [can] function, and he [does] everything" and that he has a guardianship "[t]o take care [of him]. . . To help him. . . To direct him in the right way." Souad also testified that she and her late husband put aside money for Ehab and that Osam borrowed some of that money.

Osam confirmed that Souad and Ibrahim had set aside money to take care of Ehab but he was unsure of the amount. He further admitted borrowing $8,000 from Ehab and that the money has not been paid back.

On August 7, 2018, the county court entered an order denying Souad's "Application to Remove Co-Guardians," denying Souad's "Motion for Appointment of Successor Guardian," and granting the coguardians' "Petition to Transfer the Guardianship to Another State." The court specifically found:

The record reflects there is a clear and convincing evidence that there is a continued need for a guardianship. Ehab is diagnosed with Down Syndrome. He remains an incapacitated person pursuant to lawful proceedings in this court. Since Osam, Kadija and Yasmine were appointed in December 5, 2016 they have moved Ehab to the state of Georgia. Ehab lives with Osam. Osam arranges for Ehab's medical care, education and recreational activities. Osam personally paid for Ehab's travel expenses and all of his care until he became payee in August of 2017. The co-guardians have worked as a team to

ensure Ehab is comfortable, safe and healthy. They have also devised a succession plan to care for Ehab should one of them become unable to serve.

Souad has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Souad assigns error in connection with the county court's August 7, 2018, order. These assignments of error, renumbered and restated, are: (1) the court erred in denying Souad's "Application to Remove Co-Guardians" and her "Motion for Appointment of Successor Guardian" and sustaining the coguardians' "Petition to Transfer the Guardianship to Another State" because those decisions were based, in part, on the court's prior hearing held on December 5, 2016, and subsequent order of which Souad was not provided notice and an opportunity to be heard in violation of her right to due process; (2) the court erred in denying Souad's "Application to Remove Co-Guardians" and "Motion for Appointment of Successor Guardian" because Osam's failure to disclose his indebtedness to the ward disqualified him from serving in that role; (3) the court erred in denying Souad's application and motion because the appointments of Osam, Kadija, and Yasmine violated Nebraska law governing statutory priority of appointment and which required that Osam reside with the ward for more than 6 months prior to being appointed as guardian; and (4) the court erred in sustaining the coguardians' "Petition to Transfer the Guardianship to Another State" because the court should have removed the coguardians and appointed Souad as guardian which would have allowed Souad to select the ward's place of abode.

## STANDARD OF REVIEW

An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in the county court. *In re Guardianship & Conservatorship of Alice H.*, 303 Neb. 235, 927 N.W.2d 787 (2019). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

Souad's first assignment of error is based on her claim that she was not provided with notice and opportunity to participate in the court's December 5, 2016, hearing where Osam was first appointed to serve as a coguardian with Kadija and Yasmine following the death of Ibrahim. Souad claims that, because she was not provided with notice and an opportunity to participate in that proceeding, her due process rights were violated and the decision made by the court following that December 5 hearing resulted in the denial of her subsequently filed application and motion.

Neb. Rev. Stat. § 30-2625 (Reissue 2016) provides:

(a) In a proceeding for the appointment of a guardian for a person alleged to be incapacitated or the removal of a guardian of a ward other than the appointment of a temporary guardian or temporary suspension of a guardian, notice of hearing shall be given to each of the following:

(1) The ward or the person alleged to be incapacitated and his or her spouse, parents, and adult children;

(2) Any person who is serving as guardian or conservator of the ward or who has care and custody of a person alleged to be incapacitated; and

(3) If no other person is notified under subdivision (1) of this subsection, at least one of the closest adult relatives of the ward or person alleged to be incapacitated, if any can be found.

(b) Notice which is appropriate to the circumstances of the ward or person alleged to be incapacitated shall be served personally at least fourteen days prior to the hearing on the ward or person alleged to be incapacitated and his or her spouse and parents if they can be found within the state. The court may require the petitioner to serve notice in alternative formats or with appropriate auxiliary aids and services if necessary to ensure equally effective communication with the ward or person alleged to be incapacitated, including, but not limited to, the use of braille, sign language, large print, reading aloud, or other reasonable accommodation for the known disabilities of the individual based on the allegations specified in the petition. *Waiver of notice by the person alleged to be incapacitated shall not be effective unless he or she attends the hearing and the court determines that the waiver is appropriate.*

(Emphasis supplied.)

Souad correctly asserts that she was entitled to notice of the December 5, 2016, hearing governing Osam's appointment as Ehab's coguardian. Souad's due process argument is grounded in her claim that she was not provided notice of the December 5 hearing and therefore was deprived of a meaningful opportunity to participate in the proceeding where many of the issues she raised in her September 2017 application and motion could have been previously raised.

Contrary to Souad's assertions, the record reflects that, on November 8, 2016, the court issued an "Order for Hearing" providing notice of the December 5 hearing and the certificate of service attached and executed by the Clerk of the Douglas County Court certified that the order was sent by U.S. mail to Souad's home address. Further, although the court originally stated in its December 5 journal entry that Souad did not appear at the hearing, Kadija testified during the July 30, 2018, hearing on Souad's motion and application, that she transported Souad to the December 5, 2016, hearing and sat with her at the hearing in the gallery on that date. Further, in its August 2018 order, the court found that, after reviewing the evidence, Souad did attend the December 5, 2016, hearing, and sat in the gallery that day.

Souad specifically assigns that, because she was not provided with notice of the December 5, 2016, hearing, she was denied "due process." She then cites to *In re Guardianship & Conservatorship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015), in stating, "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Brief for appellant at 24. But in *Harris v. Eberhardt*, 215 Neb. 240, 242, 338 N.W.2d 53, 54 (1983), the Nebraska Supreme Court cited favorably to the Supreme Court of Arkansas' statement in *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979), which provided, "'Any defect in the process, the return thereon or the service thereof is cured or waived by the appearance of the defendant without raising an objection, and he is precluded from thereafter taking advantage of the defect.'" The *Harris* court went on to state that "[i]t is immaterial that the defendant was ignorant of the irregularity which rendered the process ineffective. 5 Am. Jur. 2d *Appearance* § 7 (1962)."

215 Neb. at 242, 338 N.W.2d at 54-55. Under these circumstances, because the record reflects that Souad was provided with notice of the December 5 hearing by mail sent to her residence, and because the court that conducted the December 5 hearing found that Souad attended the hearing, we find that Souad waived any claim that she was denied the opportunity to be heard at a meaningful time and in a meaningful manner. Having been provided with a meaningful opportunity to contest the motions heard on December 5, Souad's due process claim fails.

In assignments of error 2 and 3, Souad alleges matters which she could have raised in the December 5, 2016, hearing in connection with the original appointment of Osam as coguardian. In response, the coguardians argue that Souad should be estopped from now arguing that they should be removed in favor of Souad due to Osam's indebtedness to the ward, Souad's statutory priority to serve as guardian, and Nebraska statutory language governing prior residency of relatives of the ward. The doctrine of claim preclusion bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Hill v. AMMC, Inc.*, 300 Neb. 412, 915 N.W.2d 29 (2018). Whereas the doctrine may have application if Souad was relitigating the same claim, we note that under Neb. Rev. Stat. § 30-2623 (Reissue 2016), upon petition of the ward or any person interested in his welfare, the court may remove a guardian and appoint a successor if in the best interests of the ward. Accordingly, Souad is provided the statutory right to petition to remove the coguardians if she can show that removal is in the ward's best interests. We therefore review Souad's remaining assignments of error in relation to this statute and Souad's specific application and motion.

Souad argues that the court erred in failing to remove the coguardians and failing to appoint Souad as guardian because: Osam was indebted to the ward; Souad has statutory priority of appointment over the ward and siblings; and Osam did not live with the ward for 6 months prior to his appointment as coguardian. Souad's arguments stem from Neb. Rev. Stat. § 30-2627 (Reissue 2016) which governs who may be appointed as guardians and priorities in appointment, and Neb. Ct. R. § 6-1435 which requires that the guardian inform the court of any indebtedness to the ward before a guardianship appointment is made. In short, Souad argues that the coguardians should be removed now in favor of Souad because Osam failed to properly disclose to the court his $8,000 indebtedness to the ward and because Souad has statutory priority of appointment over the ward's siblings at least one of whom did not reside with the ward for over 6 months prior to his appointment.

We first note that none of these factors serve as absolute prohibitions from the appellees serving as coguardians. Stated differently, neither Osam's status as a debtor to the ward's estate nor the appellees' inferior statutory priority disqualifies the appellees from serving as coguardians. See *Moss v. Eaton*, 183 Neb. 71, 157 N.W.2d 883 (1968) (holding that mere existence of adverse interest or position or mere fact that executor is either creditor or debtor of estate is not, in and of itself, ground for disqualification). See, also, Neb. Rev. Stat. § 30-2627(b) (Reissue 2016) (stating "court, acting in the best interest of the incapacitated person, may pass over a person having priority and appoint a person having lower priority or no priority"). Instead, as stated before, the issue involved here is whether these factors now warrant the removal of the coguardians on the basis that removal is in the ward's best interests.

The county court held that having reviewed the evidence, it was not in Ehab's best interests to remove his coguardians on the basis of the factors cited above and we agree. Although Souad has statutory priority over the appellees to serve as Ehab's guardian, she refuses to acknowledge that Ehab has medical issues asserting that he is "normal" despite the fact that he has Down syndrome and requires extensive medical care. Souad also fails to acknowledge her own health issues and insisted that she cared for Ehab on her own even though she relied on assistance from her late husband, Kadija, Yasmine, Osam, and Mohammad in caring for Ehab in the past. The evidence reflected that Souad has never been appointed as Ehab's guardian in the past, a position previously held by Ehab's father and sisters, and there were allegations raised regarding Mohammad and his violent tendencies and his influence over Souad. Kadija testified that Souad was unable to make the medical decisions necessary to care for Ehab and Yasmine testified that Souad restricted Ehab's services and activities and did not allow him to leave the house. The evidence reflects that, in Georgia, Ehab is receiving medical services, he is active, and engages in recreational activities. Although Osam's indebtedness to Ehab and Souad's priority in serving as guardian were factors to consider in determining whether the current coguardians should be removed, we find, on this record, that the testimony establishes that the court's decisions that it was in Ehab's best interests for the coguardians to remain in place and for Ehab's guardianship to be transferred to Georgia, are supported by competent evidence and was neither arbitrary, capricious, or unreasonable. Because we find the court did not err in denying Souad's "Application to Remove Co-Guardians" and denial of her motion to appoint Souad as successor guardian, we likewise find that the court did not err in allowing the coguardians, and not Souad, to choose the ward's place of abode.

## CONCLUSION

In sum, the record supports the county court's determination denying Souad's "Application to Remove Co-Guardians" and her motion to appoint herself as successor guardian. The record further supports the county court's granting of the coguardians' petition to transfer the guardianship to Georgia. Accordingly, the county court's order is affirmed.

AFFIRMED.